LAW OFFICES OF HUMBERTO DIAZ
HUMBERTO DIAZ (No 157692)
(E-mail:  JHDiazLaw@gmail.com)
714 West Olympic Blvd., Suite 450
Los Angeles, CA   90015
Telephone (213) 745-7477
Facsimile  (213) 745-7447

Attorneys for Defendant
RAYMOND GHALOUSTIAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN  DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND GHALOUSTIAN,<br><br>Defendant. | NO. CR-19-0714-PA<br><br>DEFENDANT'S MOTION IN LIMINE NO.1 TO PRECLUDE EXPERT TESTIMONY; MEMORANDUM OF POINTS AND AUTHORITIES<br><br>Hearing Date: May 4, 2020,<br>Hearing Time:  3:00 p.m |

Defendant, through his counsel of record, hereby files its *motion in limine* to preclude expert testimony from arresting officers that the amount of drugs defendant is said to possess at the time of each arrest in question are consistent with possession with intent to distribute and not for personal use.

This motion is based upon the attached memorandum of points and authorities, the records in this case and any other evidence the Court may allow,

Respectfully submitted,

April 6, 2020                          By  */s/ Humberto Diaz*
                                       HUMBERTO DIAZ
                                       Attorney for defendant
                                       RAYMOND GHALOUSTIAN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Mr. Ghaloustian is charged with two counts of possession of methamphetamine with intent to distribute.  There is no evidence that defendant sold or bought drugs from anyone and as far as the defense knows, there are no informants in this case.  The Government has given notice that the arresting officers (two separate arrests) will testify that the amounts of narcotics seized indicate that the narcotics were for distribution and not for personal consumption.  The defense objects.

## II.  STATEMENT OF FACTS

On August 31, 2019, Mr. Ghaloustian was stopped by LAPD officers while in a car and approximately 28 grams of methamphetamine were seized from him.

Later, on October 30, 2019, defendant was arrested again by the LAPD, this time as he was sitting in a parked car.  According to the arresting officers, over 60 grams of methamphetamine were recovered, with some of the narcotics found in defendant's possession, and some more narcotics located in a woman's purse that was inside the car.

There is no evidence that the defendant sold or bought narcotics, and there is no indication that any informants are involved in this case.

## III.  ARGUMENT

### A. The Proffered Expert Testimony Does Not Meet the Requirements of Rule 702.

The admissibility of expert testimony is governed by Fed. R. Evid. 702. Under Rule 702 a witness may provide scientific, technical or special knowledge if it is

3

determined that such a person is qualified as an expert. Once qualified, the expert witness may be permitted to offer opinion testimony "if (1) testimony is based upon sufficient, facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

According to Rules 104 and 702, as interpreted by *Daubert*, this Court functions as a gatekeeper of all proffered expert opinion testimony and must determine the qualifications, relevance, and reliability of all such testimony before it may be presented to the jury. The offering party must make a showing to the Court that the expert opinion is relevant, reliable and based on proper qualifications. Relevance, of course, must be evaluated against the potential prejudice to the accused. Reliability is measured through the methodology upon which the expert bases his or her opinions. *Daubert*, 509 U.S. at 589, 593-95; *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000). See also *United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002)(holding that the prosecution failed to establish a reliable basis for a drug slang expert because there was no evidence that the "interpretations . . . were supported by reliable methods."). Expert qualifications are based upon the witness' knowledge, skill, experience, training or education in a particular field. The opinions proffered must also be related to the expert's qualifications.

Under Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, if "experts in the field reasonably rely on such evidence in forming their opinions." *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir. 1993); accord Fed.R.Evid. 703. The expert may not, however, simply transmit that hearsay to the jury. *United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) ("When an expert is no longer applying his extensive experience and a reliable methodology, *Daubert* teaches

4

that the testimony should be excluded."). Instead, the expert must form his own opinions by "applying his extensive experience and a reliable methodology" to the inadmissible materials. *Id.* at 58.  Failure to do this would simply result in "repeating hearsay evidence without applying any expertise whatsoever," a practice that allows the government "to circumvent the rules prohibiting hearsay." *Id.* at 58-59.   The Government's proffered opinions from the  police officers appear to be nothing more than mere recitations of hearsay evidence without applying any expertise and are therefore inadmissible under Rule 702.  No evidence has been presented to show that these arresting officers are competent to opine, as experts, that Mr. Ghaloustian intended to distribute the narcotics, as opposed to personally consume them.

**B.     The Government's Expert Notice Fails to Meet the Requirements of Fed. R. Crim. P. 16(a)(1)(G).**

The accused has a right to discovery of a written summary of the proffered expert opinions of each witness that the prosecution will offer at trial. Fed. R. Crim. P. 16(a)(1)(G). This includes the qualifications of the witness **and the bases** for the proffered opinions:

> [T]he government must give to the defendant a written summary of any testimony that the government intends to use under Rule 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial . . . ***[T]he summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions and the witness's qualifications.***

*Id.* (emphasis added)

The "bases" for the witness's opinions refer to the required showing of relevance and reliability. The summaries of expert opinions therefore must include the qualifications of each expert, the bases of relevance for each specific opinion, and the bases of reliability for each specific opinion including the methodology and techniques used in gathering information and identifying the sources of all

5

information forming the bases.  Furthermore, the prosecution must permit the accused to inspect and copy all papers and documents that are material to the preparation of the defense. Fed. R. Crim. P. 16(a)(1)(E). This rule requires the discovery of all materials relied upon by the prosecution's experts. *See* Fed. R. Evid. 703.  Finally, Rule 16(a)(1)(F) permits the accused to inspect and copy results and reports of examinations and tests. This rule imposes on the prosecution an obligation to produce all of the requested expert conclusions and communications, including information regarding the methodology used by the expert. *United States v. Yoon*, 128 F.3d 515, 526 (7th Cir. 1997). The prosecution, therefore, also must produce all documents and material relied on or consulted by each witness, all results, reports and conclusions of each witness, and all policies, procedures or other manuals describing the methodology used by such experts in formulating their opinions.

The Government's expert notice for the police officers fails to provide any information about the bases and reasons for the witnesses testimony, besides than it comes from each witnesses' experience as police officers and the discovery provided fails to provide any  basis for this purported "expert" testimony. Because the Government's notice fails to meet the requirements of Rule 16(a)(1)(G) and disclose the bases, information, and methodology underlying the government's proffered expert "opinions," the defense would lack information with which to meaningfully cross-examine this expert testimony.

Given the critical importance of this "expert" testimony in the Government's case, it is vital that the Government fully comply with the expert disclosure requirements

//

6

**C. This Court Should Conduct a Pre-Trial Evidentiary Hearing on the Expert Testimony Admissibility.**

In order to determine the admissibility of expert testimony under Rule 702, a trial court must engage in an inquiry to determine whether: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *See* Rule 702. The defense thus requests at a minimum a pre-trial hearing to challenge the admissibility of the proffered expert testimony

**IV.   CONCLUSION**

For the reasons stated above, the Court should exclude the proffered expert testimony of the arresting officers.

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Ashley Fillmore and Susan S. Har, hereby files its Opposition to Defendant's Motion _in Limine_ to Preclude Expert Testimony.

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 13, 2020          Respectfully submitted,

                              NICOLA T. HANNA
                              United States Attorney

                              BRANDON D. FOX
                              Assistant United States Attorney
                              Chief, Criminal Division


                               _/s/ Ashley Fillmore_
                              ASHLEY FILLMORE
                              SUSAN S. HAR
                              Assistant United States Attorneys

                              Attorneys for Plaintiff
                              UNITED STATES OF AMERICA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant Raymond Ghaloustian ("defendant") is charged with two counts of possession with intent to distribute methamphetamine; two counts of carrying a firearm during and in relation to, and possession of a firearm in furtherance of, a drug trafficking crime; and two counts of being a prohibited person in possession of firearms and ammunition.  Defendant's Motion in Limine (the "motion") seeks to exclude expert testimony that is directly relevant to these charges. The Court should deny the motion.  First, expert testimony regarding the practices of drug distributors--including distinctions between personal consumption amounts versus distribution amounts--is routinely admitted to provide jurors with specialized knowledge, consistent with Federal Rules of Evidence 702 and 703.  Second, the government's expert notice (the "expert notice") satisfies the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G) by summarizing the anticipated testimony of Los Angeles Police Department ("LAPD") Detective II Vinh Do[1] and LAPD Officer Omar Castaneda and detailing their extensive narcotics-specific training and years of law enforcement experience, which is the basis of their expert opinion.  (Opp'n Ex. 1 at 3-4.)  Given that the Ninth Circuit has held that expert testimony of this nature may be based on a law enforcement officer's training and experience and may be introduced without holding a pre-trial hearing, the expert testimony is clearly admissible.

---

[1] The motion incorrectly characterizes Detective Do as an arresting officer.  Detective Do was not an arresting officer in this case and has had no direct involvement in this case.

## II.   RELEVANT FACTS

### A.   Conduct Charged in this Case

On August 31, 2019, LAPD officers pulled over defendant for driving a vehicle without a front license plate.  With defendant's consent, one officer patted down defendant for weapons.  The officer immediately found in defendant's waistband a loaded Beretta, 9mm caliber pistol, with an obliterated serial number.  In a search incident to defendant's arrest, officers recovered a baggie containing 27.8 grams of methamphetamine, as well as several gray cards and over $1,600 in currency--all on defendant's person.

On October 30, 2019, different LAPD officers approached defendant while he was seated in the driver's seat of a car with a license plate that was fully spray-painted black.  Defendant failed to provide the vehicle registration or his driver license, so the officers ordered defendant and the passenger out of the car.  The officers then searched the car and found, among other things, a black handbag containing a digital scale, a plastic baggie, and a brown vial, containing 25.68 grams and 1.87 grams, respectively, of actual methamphetamine.  The officers then placed defendant under arrest. During the search incident to arrest, the officers found in defendant's pants a loaded semi-automatic pistol, with an obliterated serial number.  Officers also found two baggies of methamphetamine in defendant's front left pocket--one containing 15.36 grams and one containing 21.52 grams.

### B.   Expert Notice

The government provided notice of its intent to call Detective Do and Officer Castaneda as expert witnesses on March 27, 2020.

2

(Opp'n Ex. 1 at 3-4.)  The expert notice details both officers' careers in law enforcement, relevant training, and experience handling drug-related crimes.  The expert notice also summarizes the anticipated testimony of both experts.  (Id.)  On March 30, 2020, the parties met and conferred regarding motions in limine, pursuant to the Court's criminal trial order.  (See Dkt. No. 23.)  Defense counsel did not request additional disclosures from the government or otherwise inform the government of his intent to challenge the expert notice as insufficient.  On April 8, 2020, the defense provided the government with the present motion seeking to preclude Detective Do and Officer Castaneda from testifying, based in part on alleged deficiencies in the expert notice.

**III. ARGUMENT**

**A.    The Proposed Testimony Is Proper Under Rules 702 and 703**

Rule 702 permits experts to testify to matters outside the expected knowledge of the average juror.  United States v. Cazares, 788 F.3d 956, 977 (9th Cir. 2015).  Expert testimony based on specialized knowledge is not limited to scientific testimony.  United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).  "[F]ar from requiring trial judges to mechanically apply the Daubert factors-or something like them-to both scientific and non-scientific testimony . . . judges are entitled to broad discretion when discharging their gatekeeping function.  Indeed, not only must the trial court be given broad discretion to decide whether to admit expert testimony, it must have the same kind of latitude in deciding how to test an expert's reliability."  Id. at 1168-69 (internal citations omitted).

The Ninth Circuit has consistently held that expert testimony regarding the practices of drug distributors, drug dosage amounts, and drug prices is proper to help the trier of fact to understand the evidence.  See United States v. Cordoba, 104 F.3d 225, 229-30 (9th Cir. 1997) (expert testimony regarding modus operandi of drug traffickers properly admitted); United States v. Campos, 217 F.3d 707, 719 (9th Cir. 2000) (expert testimony regarding drug prices properly admitted); United States v. Gonzales, 307 F.3d 906, 911-12 (9th Cir. 2002) (expert testimony regarding personal use and distribution quantities of drugs properly admitted).

In this case, the experts' anticipated testimony about drug distribution quantities is exactly the type of expert testimony that the Ninth Circuit has routinely upheld.  As the expert notice explains, Detective Do and Officer Castaneda will likely testify regarding user quantities of methamphetamine versus distribution quantities; the street value of methamphetamine; the possession of firearms in connection with drug trafficking; and other common practices of drug traffickers.  (Opp'n Ex. 1 at 3-4.)  They will further explain how that information applies to the evidence seized in the case at hand.  (Id.)  Defendant is charged with possession with intent to distribute methamphetamine, the elements of which are (1) defendant knowingly possessed methamphetamine; and (2) defendant possessed it with the intent to distribute it to another person. Model Crim. Jury Instr. 9th Cir. 9.15 (2020).  The Ninth Circuit Model Criminal Jury Instructions specify that "[t]o 'possess with the intent to distribute' means to possess with intent to deliver or transfer possession of methamphetamine to another person, with or

without any financial interest in the transaction." Id.  The purpose of this testimony is both to provide specialized knowledge to the jury and to help the government bear its burden in proving these elements.  Therefore, the introduction of this testimony is appropriate under Rule 702.

As to the experts' potential reliance on hearsay, under Rule 703, hearsay may form the basis of expert opinion, "so long as it is of a type reasonably relied upon by experts in their field." See Cazares, 788 F.3d at 977.  In Hankey, the Ninth Circuit held that a law enforcement officer who testified as an expert witness had not impermissibly relied on hearsay when he relied on "street intelligence" and demonstrated that "the information upon which he relied is of the type normally obtained in his day-to-day police activity." 203 F.3d at 1169-70.

There is no basis for the defense's speculation that the experts will rely on hearsay "without applying any expertise whatsoever." (Mot. at 5.)  As in Hankey, Detective Do and Officer Castaneda rely, in part, on "street intelligence" obtained during their "day-to-day police activity," in conjunction with their extensive training and professional expertise, as is laid out in the government's expert notice.  (Opp'n Ex. 1 at 3-4.)  Accordingly, the bases of the experts' testimony are proper under Rule 703, and the motion to preclude testimony on that ground should therefore be denied.

**B.    The Government's Expert Notice Satisfies Rule 16(a)(1)(G)**

Federal Rule of Criminal Procedure 16(a)(1)(G) requires a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence.  The

summary must describe "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). The defense incorrectly asserts that the expert notice did not provide the bases for the proffered opinions. Specifically, defendant challenges their relevance and reliability.

With respect to relevance, the expert notice provides a summary of each expert's anticipated testimony, which includes the following: (i) personal use versus distribution amounts of methamphetamine; (ii) the street value of methamphetamine; (iii) the way drug traffickers package, weigh, and store drugs; and (iv) the use of firearms in connection with drug trafficking crimes. (Opp'n Ex. 1 at 3-4.) This prospective testimony could not be more relevant to proving the charges at issue: possession with intent to distribute methamphetamine and possession of a firearm in furtherance of a drug trafficking crime.

As to reliability, the government's expert notice describes the experts' experience, knowledge, and the source of their knowledge in detail: Detective Do has been employed with the LAPD for 20 years and has served as a detective in the Narcotics Division for the last 10 years. Beginning in October 2016, Detective Do's became a Task Force Officer with the U.S. Drug Enforcement Administration's High Intensity Drug Trafficking Areas. In addition to attending formal training, such as Police Academy Training, Narcotics School, and Narcotics Interdiction Training with the DEA, Detective Do has amassed extensive hands-on experience with drug crimes, conducting over 200 undercover drug transactions at the street level, making him particularly qualified to testify to the above. (Opp'n Ex. 1 at 3.)

Officer Castaneda has been employed with the LAPD since 2012.  In addition to participating in various specialized narcotics training courses, Officer Castaneda has conducted approximately 200 drug-related arrest.  (Id. at 3-4.)  Officer Castaneda's training and experience spanning over seven years establish his reliability to testify as an expert witness in this case.

Defendant's reliance on United States v. Hermanek is misplaced.  289 F.3d 1076 (9th Cir. 2002).  There, the agent failed to establish a reliable basis regarding his methodology for interpreting new coded words and phrases that he encountered for the first time.  Id. at 1093.  No similar concern exists here: the officers have extensive experience with methamphetamine and have conducted hundreds of drug-related transactions and arrests.  The government has thus provided a "written summary" of the anticipated expert testimony which "describe[s] the witness[es'] opinions, the bases and reasons for those opinions, and the witness[es'] qualifications."  Fed. R. Crim. P. 16(a)(1)(G).  Therefore, the Court should deny defendant's motion to preclude the expert testimony on the basis of inadequate notice.

### C. There Is No Need for a Pre-Trial Hearing to Determine the Admissibility of the Disputed Testimony

Where, as here, the court can fulfill its gatekeeping role regarding expert testimony without holding a separate hearing, no such hearing is required.  See United States v. Alatorre, 222 F.3d 1098, 1099 (9th Cir. 2000).

A witness can qualify as an expert on the basis of "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "The threshold for qualification is low for purposes of admissibility;

minimal foundation of knowledge, skill, and experience suffices." <u>In re ConAgra Foods, Inc.</u>, 90 F. Supp. 3d 919, 953 (C.D. Cal. 2015), <u>aff'd sub nom.</u> <u>Briseno v. ConAgra Foods, Inc.</u>, 844 F.3d 1121 (9th Cir. 2017), <u>cert. denied sub nom.</u> <u>Conagra Brands, Inc. v. Briseno</u>, No. 16-1221, 2017 WL 1365592 (U.S. Oct. 10, 2017).

Detective Do and Officer Castaneda's qualifications set forth years of experience investigating the trafficking of drugs--including methamphetamine--in the United States. (Opp. Exh. 1 at 3-4.) Both experts are well qualified to offer opinions on the topics identified in the expert notice. <u>See</u> <u>United States v. Gomez-Norena</u>, 908 F.2d 497, 501 (9th Cir. 1990) (expert testified as to distribution quantity of drugs "based on his four years' experience involving over 200 narcotics arrests"); <u>Alatorre</u>, 222 F.3d at 1104 (special agent was qualified to testify as an expert on distribution quantity and prices of drugs based on his "twelve years of experience as a special agent, specialized training in the methods by which narcotics are used and sold, and extensive knowledge of marijuana smuggling as a result of his work as a case agent and in other capacities"). At trial, the government will elicit both officers' background, education, training, and experience that qualifies them to testify as experts, at which time the defense will be free to raise any objections.

In sum, the Motion fails to establish the need for a pre-trial hearing for Detective Do and Officer Castaneda.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny defendant's Motion <u>in</u> <u>Limine</u> to Preclude Proposed Expert Testimony.

8

**EXHIBIT 1**



# United States Department of Justice

## United States Attorney's Office
## Central District of California

---

*Susan S. Har/Ashley Fillmore*
*Phone:  (213) 894-3289/2416*
*E-mail:  susan.har@usdoj.gov*
*ashley.fillmore@usdoj.gov*

*1200 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California  90012*

March 27, 2020

<u>**VIA EMAIL**</u>

Humberto Diaz
Law Offices of Humberto Diaz
714 West Olympic Boulevard Suite 450
Los Angeles, CA 90015
213-745-7477
Fax: 213-745-7447
Email: JHDiazLaw@gmail.com

Re:   <u>United States v. Raymond Ghaloustian</u>,
No CR. 19-714(A)-PA

Dear Mr. Diaz:

Pursuant to Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, the government hereby discloses that at trial in the above-captioned matter the government presently intends to elicit expert testimony from the following witnesses under Federal Rules of Evidence 702, 703, and 705.  Pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, the government hereby requests reciprocal disclosure from the defense of any testimony defendant intends to use at trial under Rule 702, 703 and/or 705 of the Federal Rules of Evidence.

## A.  Forensic Chemists

Subject to a stipulation between the parties, the government intends to introduce the testimony of three DEA forensic chemists: Senior Forensic Chemist Trevor R. Equitz; Forensic Chemist James S. Joseph; and Senior Forensic Chemist Fracia S. Martinez.

Mr. Equitz will testify about his analysis of Exhibit 1, the substance obtained from defendant's person on August 31, 2019.  You have already received in discovery the lab report prepared by Mr. Equitz, Bates numbered USAO_000094, which discusses his conclusions.

Mr. Joseph will testify about his analysis of Exhibit 2, the substance obtained from the car defendant was driving on August 31, 2019.  You have already received in discovery the lab

Humberto Diaz
RE:  Raymond Ghaloustian
March 27, 2020
Page 2

report prepared by Mr. Joseph, Bates numbered USAO_000095, which discusses his conclusions.

Ms. Martinez will testify about her analysis of Exhibits 9-12, the substances obtained from defendant's person and the car he was driving on October 30, 2019.  You have already received in discovery the lab reports prepared by Ms. Martinez, Bates numbered USAO_000163-000165 and USAO_000168.

Specifically, all three chemists' testimonies will include, but is not limited to: (1) methodologies followed in analyzing the substance; (2) the reliability of the methods employed; and (3) the results of their analysis, including identification of the substance as containing methamphetamine, gross weight, net weight, purity, and amounts of actual drug.  The chemists will also testify about basic facts concerning methamphetamine -- what its components are, how it is manufactured, how it is ingested, its effects, and the standard amount of a dose of methamphetamine.  They will each also testify to the chain of custody of the respective exhibits they analyzed, and the standard practices at Southwest Laboratory regarding the chain of custody of similar controlled substances.  The bases and reasons for the chemists' opinions are their training and experience, and familiarity with the facts and evidence of this case, including their analysis of the drugs in question.

### B.  Interstate Nexus and Identification of Firearms

Subject to a stipulation between the parties, the government intends to call Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Special Agent ("SA") Mark Davis, an ATF Firearms and Ammunition Interstate Nexus Agent.  SA Davis will testify regarding the interstate nexus for the firearms and ammunition seized by law enforcement in this case as set forth in more detail in the reports produced in discovery (see Bates number USAO_000066-000067 and USAO_ 000166-000167).

SA Davis will testify that the firearms and ammunition in the First Superseding Indictment were manufactured outside the state of California and/or traveled in, and had an effect on, interstate or foreign commerce, by virtue of their recovery in California.  SA Davis will also testify regarding the nature and characteristics of the firearms and ammunition that were seized in this case.  He will testify about the definition of a "firearm" and explain how the firearms recovered meet the definition.

SA Davis has specialized training in firearms and ammunition identification.  His duties involve the regular examination of firearms and ammunition for the purpose of identification, classification, and determination of origin.  The bases and reasons for SA Davis's opinions are his training, as well as his knowledge and experience investigating cases involving firearms and ammunition, his familiarity with the origin and function of firearms and ammunition, and his examination of the firearms and ammunition in this case.

Humberto Diaz
RE:  Raymond Ghaloustian
March 27, 2020
Page 3

        The government reserves the right to substitute a different ATF agent in the event that SA
Davis becomes unavailable for trial.

### C.  Narcotics Distribution/Sales and Use of Firearms

#### 1.    LAPD Detective II Vinh Do, Supervisor on HIDTA Task Force

        Detective Vinh Do has been employed with the Los Angeles Police Department
("LAPD") for 20 years.  He has been a detective for the last 15 years and working exclusively
with the Narcotics division for the last 10 years.  He has been a Task Force Officer with the U.S.
Drug Enforcement Administration ("DEA") High Intensity Drug Trafficking Areas ("HIDTA")
since October 2016.

        Detective Do's training includes a nine-month Police Academy training, which included
a narcotics training course (approximately 20 hours).  Separately, Detective Do attended a 40-
hour Narcotics School.  He is part of the California Narcotic Officers' Association and most
recently attended the 2018 conference.  In 2017, Detective Do also attended a five-day Narcotics
Interdiction Training with the DEA.  Among other things, his training has covered the properties
and sources of narcotics, the manner in which controlled substances are distributed, purchased,
and consumed, and the use of firearms in connection with drug sales.  For approximately two
years, Detective Do conducted undercover drug buys at the street level and was involved in over
200 buys.

        Based on his training and experience, Detective Do is expected to testify about user
versus distribution amounts of methamphetamine, the street value of methamphetamine and
other drugs, and the methods and practices of illegal drug sellers in packaging, weighing, and
storing their drugs.  He would testify that the quantities of methamphetamine, the scale,
packaging, money, and firearms found on defendant's person and car are consistent with drug
distribution.  Specifically, Detective Do would testify that the amount of methamphetamine
seized in this case are consistent with distribution of the drugs and not personal use.  Detective
Do is also expected to testify regarding the possession of firearms in furtherance of drug
trafficking crimes.  He will likely testify that sellers/distributors of the types of controlled
substances involved in this case often arm themselves, particularly with firearms, to protect
themselves, their drugs, and their drug sales proceeds.

#### 2.    LAPD Officer Omar Castaneda

        Officer Omar Castaneda has been employed with the Los Angeles Police Department
("LAPD") since 2012.  Most recently, in August 2019, Omar Castaneda became a Training
Officer with LAPD.

Humberto Diaz
RE:  Raymond Ghaloustian
March 27, 2020
Page 4

        His training includes a six-month Police Academy training, during which time Officer
Castaneda participated in a 40-hour Narcotics course that provided training on the manner in
which controlled substances are manufactured, packaged, distributed, and consumed and on
conducting narcotics investigations.  Throughout Officer Castaneda's time with LAPD, he has
received on-the-job training from senior officers with specialized knowledge of and experience
with controlled substance offenses.  Officer Castaneda estimates that he has conducted
approximately 200 arrests for drug-related crimes and other crimes, of which approximately 100
were arrests strictly for drug-related crimes and activity.  From 2015 to 2016, Officer Castaneda
was assigned to the gang unit, during which time he gained experience in debriefing numerous
defendants with personal knowledge and experience regarding narcotics trafficking organizations
and the use of firearms in the course of narcotics sales activity.  Additionally, in 2016, Officer
Castaneda participated in an eight-hour training course on the properties, use, and distribution of
controlled substances.

        Based on his training and experience, Officer Castaneda is expected to testify at trial that
the amounts of methamphetamine seized in this case are consistent with the sale and distribution
of the drugs and not personal use.  He will also testify about the possession of firearms in
furtherance of drug distribution crimes, specifically to protect themselves, their drugs, and their
drug sales proceeds.

        **D.   Fingerprint Analysis**

        The government is presently evaluating potential fingerprint evidence to determine
whether expert testimony will be required at trial.

        With respect to charges that require proof of prior felony or misdemeanor convictions,
the government intends to propose stipulations regarding the convictions.  Should defendant
enter into those stipulations, the government does not anticipate offering testimony regarding
fingerprint analysis in its case-in-chief.  However, absent a stipulation, an expert in fingerprint
analysis, yet to be determined, may be called as a witness to compare fingerprints obtained from
the defendant with those contained with prior conviction documentation, and opine that the same
person suffered the prior conviction.

//

//

//

//

//

Humberto Diaz
RE:  Raymond Ghaloustian
March 27, 2020
Page 5

*          *          *

The government reserves the right to supplement this letter with additional information about each of the foregoing witnesses' anticipated expert testimony prior to trial.

Please let me know if you have any questions, or would like to further discuss any of the matters raised above.

Very truly yours,

  /s/_____

SUSAN S. HAR
ASHLEY FILLMORE
Assistant United States Attorneys
General Crimes Section

## <u>DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION</u>

The Government fails to utterly identify any "bases" upon which the proffered expert testimony is based, other than the officers "years of experience".  Government's at 8.  The defense contends this is completely inadequate.

Similarly, there is nothing in the Government's opposition about the "reliability" of such opinion to be tendered.  There is not even a mention of the methodology that such experts rely upon to render their opinions.  No documents have been produced to the defense that would assist the defense in preparing cross examination, as required by Fed. R. Crim. P. 16. Apparently, there are no materials relied upon by these "experts", given that no such materials have been provided pursuant to Fed. R. Evid. 703.

The Government's contention that the proffered opinions are relevant to show "practices of drug distributors, drug dosage amounts and drug prices" is essentially without merit.  Government's at 4.  First, there is no evidence provided to indicate that defendant either bought or sold the narcotics in question, or any other narcotics at any other time for that matter.[1]  Any evidence therefore that defendant is a "drug distributor" is presumably coming from the proffered expert testimony itself.

With regards to the dosage amounts, there is similarly no expert disclosure as to what a "dosage amount" would be in this case, or that such an opinion would have any relevance in this case.  No disclosure has been given also as to what the experts in this case would testify as to 'dosage

---

[1]   The stops in question were initiated out the purported concern by the arresting officers of gang or drug activities in the area.  The defense requested discovery regarding any information that may indicate that Mr. Ghaloustian, or the other car occupants, were in any way involved in buying or selling drugs.  No discovery in this regard has been provided to the defense.  Similarly, there is no discovery provided that Mr. Ghaloustian sold or bought drugs, on this occasion or at any other time.  No discovery regarding the use or presence of an informant has been produced to the defense.

amounts'.  At the time of the arrests, however, the officers were made aware of the fact that defendant was a habitual drug user.

The issue of "drug prices" is similarly irrelevant.  There is no evidence to indicate whether defendant bought drugs in question, nor is there evidence to indicate whether defendant intended to sell the drugs in question, or for how much.

The Government's expected reliance on the experts' "street intelligence" and "day-to-day police activity" does not form a proper basis for the proffered opinion either.  Government's at 5.  The Government's reliance on *United States v. Hankey*, 203 F.3d 1160 (9th Cir. 2000) is misplaced.  In *Hankey*, the only expert testimony issue considered was whether a gang expert could testify to the "code of silence" and repercussion for testifying against an affiliated gang members.  *Id.* at 1164.  Clearly that is not the issue at hand.

Similarly, the Government's reliance on *United States v. Gomez-Norena*, 908 F.2d 497 (9th Cir. 1990) is not well founded either.  In *Gomez-Norena*, the defendant had not objected during the trial to the admissibility of expert testimony and the appellate review in that case was only for plan error.  *Id.* at 500.

The Government's reliance on *United States v. Alatorre*, 222 F.3d 1098 (9th Cir 2000), is also misplaced.  In *Alatorre,* the Court of Appeals upheld the testimony of a Customs Service senior special agent was allowed to testify as to the value and distributable quantity of marihuana, and the structure of drug enterprises.  *Id.* at 1099.  But that case involved a defendant bringing 68 lbs. of marihuana across the border, in a compartment above the rear tire well.  *Id.*  The facts of this case are in

2

stark contrast with the facts in *Alatorre*:  the present case involves one ounce of methamphetamine, located in the defendant's person.

The Court should deny the use of the "expert" testimony by the Government.  At the very least the defense is entitled to a pre-trial hearing to challenge the admissibility of the proffered expert testimony