LAW OFFICES OF HUMBERTO DIAZ
HUMBERTO DIAZ (No 157692)
(E-mail: JHDiazLaw@gmail.com)
714 West Olympic Blvd., Suite 450
Los Angeles, CA  90015
Telephone (213) 745-7477
Facsimile  (213) 745-7447

Attorneys for Defendant
RAYMOND GHALOUSTIAN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN  DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>RAYMOND GHALOUSTIAN,<br><br>          Defendant. | NO. CR-19-0714-PA<br><br>**NOTICE OF MOTION; MOTION TO SUPPRESS EVIDENCE DERIVED FROM UNLAWFUL SEARCHES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: May 4, 2020<br><br>Hearing Time:  3:00 p.m |

TO: NICOLA T. HANA, UNITED STATES ATTORNEY, SUSAN S. HAR AND ASHLEY FILLMORE, ASSISTANT UNITED STATES ATTORNEYS:

PLEASE TAKE NOTICE that, on May 4, 2020 at 3:00 p.m., or as soon thereafter as she may be heard, defendant RAYMOND GHALOUSTIAN, through counsel, will move this Court for an order suppressing all evidence in this case based on the Fourth and Fifth Amendments to the United States Constitution, as well as *Miranda v. Arizona* and its progeny:

//

# MOTION

Defendant, RAYMOND GHALOUSTIAN, though counsel, hereby moves this Honorable Court for an order suppressing all the evidence obtained as a result of the unlawful stops, detention, and warrantless searches by the Los Angeles Sheriff's Department on August 31 and October 30, 2019, including, but not limited to: any narcotics, firearms, ammunition, and other evidence.

Mr. Ghaloustian also seeks to suppress any and all statements made to law enforcement at the time of those arrests.

This motion is based on the instant notice of motion and motion, the attached memorandum of points and authorities, the documents on file in the Clerk's Record, and all other material that may come to this Court's attention at the time of the hearing on this motion.

Respectfully submitted,

April 6, 2020

By */s/ Humberto Diaz*
HUMBERTO DIAZ
Attorney for defendant
RAYMOND GHALOUSTIAN

2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Raymond Ghaloustian is charged with two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841; two counts of carrying a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. 924©, and two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).

The charges stem from two distinct traffic stops by the LAPD on August 31, 2019, and October 30, 2019.[1] Mr. Ghaloustian was arrested each time and his person and the car he was occupying was searched. During each arrest, Mr. Ghaloustian was also questioned by the arresting officers without the benefit of *Miranda* warnings.

Mr. Ghaloustian maintains that the warrantless searches were unlawful and violated his Fourth Amendment right to be free from unreasonable searches and seizures. First, because the officers lacked reasonable suspicion to conduct a stop and detention; and second, because the officers lacked probable cause to search the vehicle. Accordingly, the Court must suppress all evidence resulting from the search, including, but not limited to, the drugs, guns, and ammunition.

Mr. Ghaloustian also maintains that any statements he made to law enforcement were made in violation of *Miranda*, and must be suppressed. The defense further contends that any statements that were made during the arrests in question were involuntary.

---

[1] The stops were separated in time and not related to each other. The defense contends that the violations at each one of the stops were the same.

3

## II. STATEMENT OF FACTS

On August 31, LAPD officers stopped Mr. Ghaloustian, as he was driving a vehicle in the San Fernando Valley. The officers claim they began following this vehicle from a '\location "known" for illegal activity, and also an area where gang members gather for 'illicit activity'. The excuse given by the officers for the stop was that the car in question did not have a front license plate. Mr. Ghaloustian and the passenger were asked to get out of the car, and were placed under arrest. Mr. Ghaloustian was questioned, without the benefit of *Miranda* warnings, and thereafter his person was searched. The officers report that approximately one ounce of methamphetamine was found, together with a firearm and over $1,600 in cash. The officers also found evidence consistent with credit card fraud activity. This arrest resulted in Counts One, Two and Three of the First Superseding Indictment.

On October 30, 2019, Mr. Ghaloustian was inside a car parked in a residential are of the San Fernando Valley, when LAPD officers approached the car and placed Mr. Ghaloustian and another occupant of the car under arrest. The officers purportedly were in the area looking for stolen vehicles and gang activity. The excuse given for the arrest is that the car in question had a "spray-painted license plate", and that the officers were looking for stolen cars. Mr. Ghaloustian was searched after he was placed under arrest, and two bags of methamphetamine were recovered by the officers, as well as a firearm. Also found in defendant's person was evidence of fraudulent credit card activity. The car Mr. Ghaloustian occupied was also searched and additional narcotics were found in the car, inside a

woman's purse, together with evidence of fraudulent activities. Mr. Ghaloustian was also questioned during this stop after he was placed under arrest, again without the benefit of Miranda writings. This arrest resulted in Counts Four, Five and Six of the First Superseding Indictment.

## II. ARGUMENT

### a. All Evidence Emanating From The Stop and Searches Of The Vehicles Due To Violations Of Mr. Ghaloustian's Fourth Amendment Rights

The evidence obtained from Mr. Ghaloustian's persona and vehicles, including defendant's subsequent statements, must be suppressed because the officers did not have sufficient cause to stop Mr. Ghaloustian and because defendant was detained well beyond the length of time reasonably necessary to issue a citation for the alleged vehicle code violations.

#### 1. The Deputies did not have reasonable suspicion or probably cause to conduct traffic stops.

The Fourth Amendments' prohibition against unreasonable searches and seizures include the investigatory stops of a case. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975).

#### 2. The Officers Unreasonably Prolonged the Traffic Stops

A seizure for a traffic infraction justifies a "relatively brief encounter," that is more "analogous to a so-called *Terry* stop" than a formal arrest. *Rodriguez v. United States*, 575 U.S. 348 (2015). "Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission" -- to address the traffic violation that warranted the stop. *Id.* citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)

5

and attend to related safety concerns." *Id*. "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate that purpose." *Id*. At 349, citing *Caballes*, 543 U.S. at 407. The fact that a minor traffic violation stop takes place does not necessarily justify arrest and/or search, because the "[a]uthority for the seizure thus ends when task tied to the traffic infraction are – or reasonable should have been completed." *Id*. Here, the government must justify deputies prolonging the traffic stops and searches of the vehicles.

"[A] standard less than probable cause" is applied to cases involving brief investigatory stops. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To legally conduct an investigatory stop and thereby intrude upon that individual's right to privacy, a police officer must demonstrate reasonable suspicion that criminal activity is occurring or about to occur. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). In determining whether a stop was justified by a reasonable suspicion, courts consider whether, in light of the totality of the circumstances, the officers had a particularized and objective basis for suspecting the particular person stopped was engaged in criminal activity or that criminality was imminent. *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996).

For this case, the officers lacked reasonable suspicion to conduct an investigatory stop of the vehicles Mr. Ghaloustian was occupying. The real reason the officers arrested the car occupants was that the officers were looking for stolen cars and concerned about gang activity in the area. The fact that the officers were purportedly investigating general illegal activities does not give the officers the right to stop, arrest and search

6

individuals.  For these reasons, the initial stop of the vehicle was illegal. *See United States v. Hensely*, 469 U.S. 221 (1986) (finding that police may stop individuals for past criminality only in limited circumstances, such as where "police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony.")  Neither Mr. Ghaloustian nor the other occupants of the cars were engaged in criminal activity nor was Mr. Ghaloustian about to engage in criminal activity when the deputies stopped or approached his vehicle.  In the absence of reasonable suspicion, the stop was therefore unlawful.

Even assuming that the initial stop was lawful, the officers were not entitled to continue to detain Mr. Ghaloustian or to search his residence, car, possessions, or person.  An otherwise lawful stop may "become unlawful if it is prolonged beyond the time reasonably required to complete that mission" which initially justified the stop.  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  That is, a lawful stop may become unlawful when the purpose of the stop morphs into an investigation that is itself not supported by any reasonable suspicion.  *Id*. at 408.  Further, a search incident to even a lawful stop has limitations: "[t]e sole justification of the search in the [case of stop] is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Terry v. Ohio*, 392 U.S. 1, 29 (1968).

The arresting officers only made contact with Mr. Ghaloustian for very minor vehicle code infractions, so even assuming, arguendo, that the stated reasons for the initial stop were lawful, the officers had no right to

7

order Mr. Ghaloustian out of the vehicle, arrest and questioned him without the benefit of *Miranda* warnings. Accordingly, because the stops in question were illegal and all evidence derived from the unconstitutional stop and search should be suppressed.

A.   **The Officers Lacked Probable Cause to Search the Vehicles.**

In the event that the Court concludes that the officers had reasonable suspicion to make the traffic stop and arrest Mr. Ghaloustian, it should nevertheless suppress the evidence seized from the vehicles, because the warrantless search was not supported by probable cause.

The officers did not have any information that would indicate that Mr. Ghaloustian lacked the permission to possess or drive the vehicles in question. As such, he has a property interest and/or possessory interest in his vehicle; and therefore, has standing to challenge the warrantless search. *See Rakas v. Illinois*, 439 U.S. 128, 147-48 (1978) (holding that the defendants lacked standing to assert a Fourth Amendment challenge to a warrantless search of an automobile because they neither asserted a property nor a possessory interest in the searched automobile).

Law enforcement officers may search a vehicle without a warrant if sufficient probable cause exists to justify the issuance of a warrant. *See United States v. Ross*, 456 U.S. 798 (1982). However, when a law enforcement officer searches a car without probable cause, the occupant's Fourth Amendment rights have been violated, *see Florida v. Royer*, 460 U.S. 491, 497-99 (1983), and the exclusionary rule bars the prosecution from introducing evidence that was obtained as a result of the illegal seizure against that person. *See Wong Sun v. United States*, 371 U.S. 471,

8

484 (1963). Probable cause to conduct a warrantless search depends upon the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This requires the court to determine the facts leading up to the search and whether from the standpoint of an objectively reasonable police officer those facts amount to probable cause. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In cases where the existence of probable cause is doubtful, the Supreme Court has held that district courts should favor the issuant of warrants. *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984) (*per curiam*).

The proffered grounds to establish probable cause for each of the warrantless searches are insufficient even when examined in their totality. On both occasions, Mr. Ghaloustian was stopped and arrested for very minor vehicle code infractions, and these reasons cannot be sufficient to justify the arrest, prolonged detention and warrantless searches of the of the vehicles and its occupants.

Accordingly, because the Government cannot meet this burden and demonstrate that the searches were constitutionally valid, all of the alleged evidence recovered as a result of that searches must be suppressed.

B.  **Any Statements Made by Mr. Ghaloustian Must Be Suppressed as They Were Made in Violation *of Miranda*.**

Not only did the officers not have a valid search warrant, but Mr. Ghaloustian was interrogated while in custody without having been administered *Miranda* warnings. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court held that before the police may question a person who is in custody, they must advise him that he has certain constitutional rights. In particular, an officer conducting an

9

interrogation of a person in custody must advise the person that (1) he has the right to remain silent; (2) anything he does say will be used against him; and (3) if he cannot afford a lawyer, one will be appointed to represent him. *Id.* at 467-73.

Two conditions must exist for *Miranda* to apply: First, the defendant must be in a custodial setting; Second, the questioning must be an interrogation, "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980). A custodial setting has been construed to include situations where there is a "significant deprivation of freedom." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977), quoting *Miranda*. The Ninth Circuit applies an objective test, i.e., whether a reasonable person in such circumstances would conclude after brief questioning that he or she would not be free to leave. *United States v. Beraun-Panez*, 812 F.2d 578, 580 (9th Cir. 1987). The following factors have been held to be relevant factors in determining whether a reasonable person would conclude that he or she was free to leave during questioning: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) duration of the detention; and (5) the degree of pressure applied to detain the individual. *Id.*

The Government bears the burden of demonstrating valid *Miranda* warnings were given prior to a custodial interrogation. *United States v. Harrison*, 34 F.3d 866, 890 (9th Cir 1994).

Here, the officers came into contact with Mr. Ghaloustian, and defendant was directed him to exit the vehicle he had been occupying. He was essentially placed under arrest, and the arresting officers proceeded to

10

question defendant.  Because the officers did not administer *Miranda* warnings to Mr. Ghaloustian before questioning him, any and all statements by Mr. Ghaloustian must be suppressed.

### D. ANY STATEMENTS MADE BY DEFENDANT WERE INVOLUNTARY

Independent of a *Miranda* violation, a statement is inadmissible at trial, *Lego v. Twomey*, 404 U.S. 477, 478, as such a statement would be a violation of a defendant's right to due process under the Fourteenth Amendment, *Jackson v. Denno*, 378 U.S. 368, 385–86 (1964).

A statement is involuntary if it is produced through coercive police actions, *see e.g. Colorado v. Connelly*, 479 U.S. 157, 167 (1986), where the conduct in analyzed under the totality of circumstances.  *Withrow v. Williams*, 507 U.S. 680, 693 (1993). "The factors to be considered include the degree of police coercion; the length, location and continuity of the interrogation; and the defendant's maturity, education, physical condition, mental health, and age." *Brown v. Horell*, 644 F.3d 969, 979 (9th Cir. 2011) (citations omitted).

//

11

# III.
# CONCLUSION

For the foregoing reasons, Mr. Ghaloustian respectfully requests that the Court enter an order suppressing all evidence resulting from the illegal stops in this case. All statements made should also be suppressed because those statements were obtained in violation of *Miranda* and were involuntarily made.

Respectfully submitted,

DATED: April 6, 2020      By */s/ Humberto Diaz*
                          HUMBERTO DIAZ
                          Attorney for defendant
                          RAYMOND GHALOUSTIAN