DECLARATION OF OFFICER ANDREW GREEN

I, Andrew Green, declare as follows:

1.    I am a police officer with the Los Angeles Police Department ("LAPD").  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.  Because I am making this declaration for the limited purpose of addressing issues raised in the motion to suppress filed by defendant Raymond Ghaloustian ("defendant"), I have not included each and every fact known to me concerning this investigation.

2.    I have been employed by the LAPD since April 2010.  I joined the Metropolitan Division of the LAPD in 2015, which focuses on violent crime and gang crime.  At the outset of my career in law enforcement, I completed a six-month Police Academy training.  I have since completed numerous additional trainings, including various firearms-related trainings, advanced tactics training, and academy instructor training.

3.    On August 31, 2019, at approximately 6:00 p.m., I was on patrol behind the Studio Inn Motel at 13561 Sherman Way Avenue in Van Nuys, California.  This area is a known narcotics sales area and gathering location for illicit activity, particularly by armed gang members.

4.    I was with my partner, Officer Kevin Moore, who was driving that day.  We were in a dual-purpose police car.  We were both in full police uniform equipped with bodyworn video.

5.    While on patrol, I saw two men in a black 2019 Mercedes model S500 car, with license plate number 8KWX059, at the Studio Inn Motel reverse down the alleyway away from the motel.  I observed that

1 the Mercedes did not have a front license plate, which is a violation
2 of California Vehicle Code section 5200(a).
3      6.   The Mercedes drove south on Allott Avenue then turned
4 eastbound onto Sherman Way.  We initiated a traffic stop at the
5 intersection of Allott Avenue and Sherman Way.
6      7.   After the Mercedes came to a stop, we ordered the driver
7 (later identified to be defendant) and the passenger (later
8 identified to be H.K.) to get out of the car and move to the
9 sidewalk.
10     8.   After obtaining defendant's consent to conduct a weapons
11 pat-down, I discovered a loaded Beretta, 9mm caliber pistol, with an
12 obliterated serial number, that had been concealed in his waistband.
13 The handle of the gun had been covered by defendant's shirt.  At that
14 point, there was probable cause to arrest defendant for carrying a
15 concealed firearm, in violation of California Penal Code Section
16 25400.
17     9.   I searched defendant incident to arrest.  In defendant's
18 front, left pocket, he had a knife; a Newport cigarette box with a
19 plastic baggie containing what was later confirmed to be
20 approximately 27.8 grams of actual methamphetamine; and approximately
21 18 fraudulent credit cards.  In defendant's back left pocket, he had
22 a wallet with approximately $1,626 in cash in multiple denominations.
23 I watched Officer Moore search H.K. and recover a large amount of
24 cash, which he informed me was $2,000.
25     10.  I asked H.K. why he had so much cash, and defendant
26 responded that they gambled.  After a brief exchange with defendant,
27 I commented that the quantity of drugs defendant had been carrying
28 was a lot for one person.  Defendant then volunteered that the

2

methamphetamine in the cigarette was for "a few people." In the course of this conversation, I was not attempting to elicit an admission from defendant.

11. Officer Moore and I subsequently searched the car. Among other things, we found in the center console of the car a Marlboro cigarette box containing a small amount of methamphetamine, and three pieces of metal and a $20 dollar bill, all with a burnt, heroin-like residue.

12. While we were still in the field, following defendant's arrest, we learned using LAPD resources that defendant was a convicted felon. Both defendant and H.K. were transported to the Van Nuys station for booking. We then verified defendant's criminal history at the station.

13. I later reviewed the Drug Enforcement Administration ("DEA") lab report confirming the weight and purity of the methamphetamine as described in paragraph 9.

14. **Exhibit A** is a true and accurate copy of approximately 32 minutes and 18 seconds of my bodyworn video from that day capturing the stop of the Mercedes through the time defendant and H.K. were placed into the police car to be transported to the station.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on April 19, 2020.

*[signature]* 4-20-20
ANDREW GREEN

<u>DECLARATION OF OFFICER OMAR CASTANEDA</u>

I, Omar Castaneda, declare as follows:

1. I am a police officer with the Los Angeles Police Department ("LAPD"). I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness. Because I am making this declaration for the limited purpose of addressing issues raised in the motion to suppress filed by defendant Raymond Ghaloustian ("defendant"), I have not included each and every fact known to me concerning this investigation.

2. I have been employed by the LAPD since October 2012. I became a Training Officer with the LAPD in 2019. I have undergone extensive law enforcement training. For example, I completed a six-month Police Academy training, which included a 40-hour Narcotics course. In 2016, I participated in an eight-hour training course on the properties, use, and distribution of controlled substances. In addition to formal training, I have received on-the-job training from senior LAPD officers specializing in narcotics investigations. During my tenure with the LAPD, I have conducted approximately 200 arrests for drug-related crimes and other crimes.

3. On October 30, 2019, at approximately 10:20 a.m., I was on patrol in the residential area of Gledhill Street and Kester Avenue in North Hills, California. The area is known for stolen cars, burglary and theft from cars, and gang activities. I was with my partner, Officer Alejandra Bautista, and we were conducting extra patrol for stolen cars and gang activities. Officer Bautista and I were both in full police uniform equipped with bodyworn video, and we were in a marked police car.

4. While driving down Gledhill Street, I saw a black, 2012 Mercedes car parked in front of 14748 Gledhill Street. Earlier that year, I had assisted in an investigation of a "chop shop" (disassembling stolen cars to sell parts) at that exact house. The rear license plate of the Mercedes had been spray-painted black, obscuring the license plate number in violation of California Vehicle Code section 5201(a). The front passenger door was open. Suspecting a possible stolen vehicle or burglary from a vehicle, I approached the driver's side of the car where defendant was sitting. An individual named H.L. sat in the passenger seat.

5. I began asking defendant basic, investigatory questions about the obscured license plate, his identification, and his registration. He was not able to produce his license or registration. While defendant was still seated in the car, I saw that there was a knife in the cup holder in the center console, which was accessible to both defendant and H.L.

6. After I took down defendant's information, I conducted a wants and warrants search and discovered defendant had an outstanding federal Wanted Person Full Extradition warrant for a weapons violation (No. 19-MJ-04022). I also ran the VIN number of the Mercedes and saw that it was registered to a third-party named A.P. Given that there were two individuals in the car, as well as the type of crime associated with the neighborhood and the criminal history associated with the house the car was parked in front of, I called for an additional unit, and Officers Scott Bush and Raul Hernandez arrived.

7. Defendant provided his consent to search the Mercedes. In the rear, a backseat was reclined forward, providing access to the

2

trunk area. On top of the reclined seat, there was a sheet of black plastic covering a large mound. After I pulled the black plastic away, I could see that there were two printers and various backpacks and bags, including a large black purse.

8. Upon searching the purse, I found a digital scale and a pouch containing a plastic baggie and a brown vial containing what was later confirmed to be 25.68 grams and 1.87 grams, respectively, of actual methamphetamine.

9. In the same backseat area under the black plastic, I found a blue drawstring backpack. Upon a search of the backpack, I found: (1) a pink binder with papers with personal identifying information; (2) pages printed with fraudulent passports bearing defendant's photograph but different names and identifying information; and (3) a blank template for a California driver's license. In the center console of the car, I found a black notebook with handwritten notes of personal identifying information.

10. After defendant was placed under arrest, I conducted a search of defendant's person. In his pants pockets, defendant had over 20 suspected fraudulent credit cards and false ID cards; two plastic baggies containing what was later confirmed to be 15.36 grams and 21.52 grams of actual methamphetamine; and $47 in cash in multiple denominations. Concealed in his groin area, defendant had a loaded Smith & Wesson .380 caliber, semi-automatic pistol, with an obliterated serial number. Defendant was transported to the Mission station for booking approval. Officer Bautista and I then transported defendant to Van Nuys station. I followed up on the outstanding warrant by calling Officer John Hackman, whose contact information was listed on the warrant. Officer Hackman confirmed

that the warrant was a federal arrest warrant for defendant, and arrangements were made to transfer custody from local to federal law enforcement.

11. I later reviewed the Drug Enforcement Administration ("DEA") lab reports confirming the weight and purity of the methamphetamine described in paragraphs 8 and 10.

12. **Exhibit B** is a true and accurate copy of approximately 1 hour and 18 minutes of my bodyworn video from October 30, 2019 capturing the stop of the Mercedes through the time defendant and Lee were placed into the police car to be transported to the station.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on April 20, 2020.

#41193

OMAR CASTANEDA

DECLARATION OF OFFICER SCOTT BUSH

I, Scott Bush, declare as follows:

1. I am a police officer with the Los Angeles Police Department ("LAPD"). I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness. Because I am making this declaration for the limited purpose of addressing issues raised in the motion to suppress filed by defendant Raymond Ghaloustian ("defendant"), I have not included each and every fact known to me concerning this investigation.

2. I have been employed by the LAPD since February 2009. I am currently a Training Officer in the LAPD's Mission Area division's patrol. Previously, I worked in the LAPD's gang unit for over three years. I have completed extensive training as a law enforcement officer, including a six-month Police Academy training and a 40-hour gang course. I have also participated in various trainings held by the District Attorney's Office and have testified as a gang expert many times in state court.

3. On October 30, 2019, at approximately 10:30 a.m., I was on routine patrol with my partner, Officer Raul Hernandez. We received a call for backup assistance in front of 14748 Gledhill Street in North Hills, California. We were both in full police uniform equipped with bodyworn video and were in a marked police car.

4. When Officer Hernandez and I arrived, I saw defendant and Homin Lee standing on the sidewalk with handcuffs. I also saw a parked, black Mercedes with an obscured rear license plate. Officer Castaneda and Officer Bautista were the main, investigating officers.

5. While Officer Castaneda and Officer Bautista searched the Mercedes, Officer Hernandez and I stood by with defendant and Lee. I asked defendant basic questions about the registration and ownership status of Mercedes. Among other things, defendant told me that he and his family had bought the car around two to two-and-a-half months ago.

6. **Exhibit C** is a true and accurate copy of approximately 1 hour and 18 minutes of my bodyworn video from October 30, 2019 capturing my arrival to 14748 Gledhill Street through the time defendant and Lee were transported and escorted into the Mission station.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on April 19, 2020.

_____  4/19/20
SCOTT BUSH